**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LASHAWN ZIEGLER, ET AL.,** | ) | **CASE NO.4:04CV1248** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CITY OF WARREN, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

Plaintiffs LaShawn Ziegler and Mighty Lion, Inc. have brought this Second Amended Complaint for damages under 42 U.S.C. § 1983 and § 1981, and for intentional interference with a business relationship against the City of Warren, Police Chief John Mandopoulas, and "John Doe" police officers. Plaintiffs claim Defendants deprived them, under color of state law, of rights guaranteed by the Fourteenth Amendment to the United States Constitution, specifically, the rights to engage in business, make contracts, and earn a salary. Defendants have filed a joint Motion to Dismiss Plaintiffs' actions for failure to state a cause of action on which relief can be granted, also raising the defenses of qualified immunity and failure to exhaust administrative/judicial remedies (ECF Dkt# 25). For the following reasons, the Court grants, in

1

part, and denies, in part, Defendants' Motion.

## FACTS

Plaintiff Mighty Lion, Inc. ("Mighty Lion") is engaged in the for-profit business of operating the nightclub "77 Soul." Plaintiff LaShawn Ziegler ("Ziegler"), a black male, is a shareholder and employee of Mighty Lion. Ziegler is Mighty Lion's only shareholder involved in the daily operations of 77 Soul. 77 Soul is a night club catering primarily to minority, urban, young adults and conducts business on a leased premises located at 4256 Youngstown-Warren Road, in Warren, Ohio.

Plaintiffs allege Defendant Chief of Police Mandopoulas ("Mandopoulas"), along with certain Defendant Police Officers, engaged in conduct intended to deprive Plaintiffs of their constitutional rights, business opportunities, and contracting abilities. The conduct allegedly consisted of, among other things, racially offensive language, unwarranted use of drug-sniffing dogs during business hours, and unwarranted traffic stops on the premises. As a result, Plaintiffs claim they were denied the opportunity to obtain the benefits which are afforded to "white" citizens. Plaintiffs contend these actions were the result of a plan by Mandopoulas and Defendant City of Warren ("City") to dissuade customers from patronizing 77 Soul. Plaintiffs further contend these actions were driven by racial discrimination.

Around February 12, 2004, the City issued a Citation Order declaring the premises "a serious hazard," and ordering the premises vacated. Plaintiffs do not allege they appealed the Citation Order, nor do they allege the post-deprivation remedies afforded under City of Warren municipal codes were inadequate. Also, the Citation Order appears to have been issued by the building department and not the police department, although Plaintiffs' Second Amended

Complaint only alleges the City of Warren issued the citation order.

Plaintiffs allege Defendants' enforcement of city ordinances and other governmental regulations was used as a method of "shutting down" Plaintiffs' business. As a result of the City's Order, 77 Soul has ceased to operate. In addition, Plaintiffs contend their employment benefits were damaged, as well as their ability to engage in business, make contracts, and earn a salary.

## LAW AND ANALYSIS

**I. Standard of Review**

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mann vs. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994) quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Accordingly, in order to grant Defendants' 12(b)(6) Motion to Dismiss, the Court must be of the opinion that the Plaintiff has not proved one fact which could lead to a possible verdict in their favor. Furthermore, "it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Finally, Rule 12(b)(6) does not countenance dismissals based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196,1199 (6th Cir. 1990) quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

On May 31, 2005 the Court ordered Plaintiffs to Amend their Complaint to name in the caption those persons Plaintiffs intended to pursue claims against. Plaintiffs had named individuals in the body of their complaint not listed in caption and the Court found no service or

notice had been provided those individuals. On June 6, 2005, Plaintiffs filed their Second Amended Complaint naming the City of Warren, Chief Mandopoulas and John Doe police officers as defendants. Therefore, the Court finds that any claims against other individuals previously named in Plaintiffs' prior complaints have been abandoned.

## II. 42 U.S.C. § 1983

Section 1983 provides a civil cause of action against any person who, under color of state law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To succeed on a § 1983 claim, the Plaintiff must establish the following two elements: 1) he was deprived of a right secured by the Constitution or laws of the United States and 2) he was subjected to or caused to be subjected to this deprivation by a person acting under color of law. *White v. Robertson-Deming*, 9 Fed. Appx. 418 (6th Cir. 2001).

### 1. Standing under 42 U.S.C. § 1983

In determining citizenship, a corporation is a citizen of the state where it is incorporated and the state where its principal place of business is located. 28 U.S.C.S. § 1332(c)(1). As a citizen, Plaintiff Mighty Lion, Inc., a corporation, has standing to bring this suit. Corporate entities are considered to be "persons." *Quarles v. The City of East Cleveland*, 202 F.3d 269 (N.D. Ohio 1999) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 688 (1978)). Furthermore, where a corporation is owned and controlled by members of one racial group, it only comports with justice and common sense to conclude that such corporation could be the target of racial animus. *Florence Urgent Care v. Healthspan, Inc.*, 445 F. Supp. 2d 871 (S.D. Ohio 2006) (citing *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989)). Because Plaintiff Mighty Lion is considered a person, under this reasoning it can also assume a racial identity.

4

Thus, Plaintiff Mighty Lion, Inc. has standing to bring this claim.

A more interesting question is the standing of Plaintiff LaShawn Ziegler. Plaintiff does not allege that any of the discriminatory actions by the police were directed at him personally. He does not allege any stops, searches or seizures involved him. Instead, the allegations appear to be directed at either the corporation or its customers. As the Sixth Circuit in *Quarles* held, a plaintiff may not assert a corporation's "constitutional and federal statutory claims solely on the basis of his status as the sole shareholder." *Quarles* at *3. Plaintiff Ziegler does not allege he is the sole shareholder of Mighty Lion. He does not allege he was the assignee of any claims of the corporation nor does he allege he was the guarantor of any debts. Ultimately, all of Plaintiff Ziegler's constitutional and federal claims involve injuries related to the alleged discrimination against Mighty Lion. He alleges loss of employment and loss of benefits and wages. The Sixth Circuit in *Quarles* ultimately determined that Plaintiff lacked standing, as he failed to allege any individual injury "***unrelated*** to the supposed harm visited upon the corporation itself." *Id.* at 5. Therefore, Plaintiff Ziegler's federal and constitutional claims must dismissed for lack of standing.

### 2. Deprived of right secured by Constitution

Plaintiffs allege Defendants' actions have constructively limited their rights to engage in business and employment, to make contracts, and earn a living. The U.S. Supreme Court has previously stated "'liberty' means not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge...and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men. In a Constitution for a free people, there can be no doubt the

5

meaning of 'liberty' must be broad." *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972).

Furthermore, the Sixth Circuit has recognized the right to earn a living as a protected "liberty" interest. *Bacon v. Peters*, 772 F.2d 259, 263-264 (6th Cir. 1985). Here, Plaintiff corporation has been denied not only its right to contract and engage in common occupations of life, but has also been deprived of the right to earn a living after the corporation was shut down due to a citation issued by the police.

Should the Court find Plaintiffs were denied their right to liberties afforded them by the Constitution, the Court must determine whether these rights were denied without due process of law. Viewing the facts in the light most favorable to the Plaintiffs, the citation could be viewed as the deprivation of Plaintiffs' rights without due process of law. Accordingly, the Court needs to review evidence which is not yet available at this stage in the proceedings in order to determine whether there was probable cause for this citation.

### 3. Deprived by person acting under color of state law

The citation was issued by the City of Warren's building department, according to Defendants. The discriminatory and harassing actions allegedly taken against the Plaintiffs involved Defendant police officers. In determining if a Defendant is proper, the United States Supreme Court has stated, "the ultimate question in determining whether a person is subject to suit under 42 U.S.C. § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the state?" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Here, the City and Defendant police officers were acting under color of state law as the alleged constitutional deprivations occurred in their official capacity as officers and

therefore, their actions were fairly attributable to the state.

### 4. Conclusion of § 1983 claim.

Plaintiffs have made sufficient claims of violations against them to satisfy the necessary elements of a § 1983 claim.  However, it should be noted that in the Second Amended Complaint and all prior complaints there is no mention of Ziegler being a direct victim of the alleged constitutional violations.  With this in mind, the Sixth Circuit has stated, a § 1983 action is "entirely personal to the direct victim of the constitutional tort."  *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000).  The Second Amended Complaint alleges use of racially offensive language, the unwarranted use of drug dogs, and unwarranted traffic stops, but fails to name Plaintiff Ziegler as the direct victim of any of this conduct.  It is clear the actions had a financial impact on Ziegler, but this makes him an indirect victim of the outcome, not a direct victim of the actions.

Furthermore, the Second Amended Complaint does not clarify the specifics of the citation issued, other than stating the premises was a "serious hazard."  The Plaintiffs fail to make any allegations as to whether this citation was either warranted or appealed.   Again, because evidence as to the probable cause of this citation and whether Plaintiffs' were directly affected are not available to the Court at this stage of the proceeding, dismissal of the claim is inappropriate.

## III.  42 U.S.C. § 1981

Section 1981 provides that all persons are entitled to equal rights under the law.

Specifically, everyone shall have the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. Making and enforcing contracts includes making, performance, modification, and termination of contracts and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981.

To establish a *prima facie* claim under § 1981, the Plaintiff must present evidence with respect to the following elements: 1) the plaintiff is a member of a racial minority; 2) there was an intent to discriminate on the basis of race by the Defendant; and 3) the discrimination concerns one or more of the activities enumerated in the statute. *Mayers v. Sedgwick Claims Mgmt. Servs.*, 101 Fed. Appx. 591 (6th Cir. 2004).

### 1. Standing under 42 U.S.C. § 1981

Corporate entities are considered to be "persons." *Quarles, supra*. Furthermore, where a corporation is owned and controlled by members of one racial group, it only comports with justice and common sense to conclude that such corporation could be the target of racial animus. *Florence, supra*. Because Plaintiff Mighty Lion is considered a person, under this reasoning it can also assume a racial identity. Thus, Plaintiff Mighty Lion, Inc. has standing to bring this claim.

### 2. Plaintiff is a member of a racial minority

This element is undisputable, as Ziegler is a member of a racial minority and "77 Soul"

catered primarily to minority, urban, young adults. In addition, under the reasoning previously mentioned, because the only shareholder/employee of Plaintiff Mighty Lion, Inc. known by the Court is African American, the Court will assume its racial identity to be African American.

### 3. Intent to discriminate on the basis of race by Defendant

Plaintiffs allege no causal connection between the actions taken by Defendants' and the raced of Plaintiff Ziegler or the patrons of "77 Soul." When looking at the circumstances and evidence, a conclusion can be drawn that some of these actions were racially driven, but the Plaintiffs allege no facts which can directly prove the actions of Defendants were inspired by race. At this stage in the proceeding, more facts are needed to determine the intent of Defendants.

### 4. Discrimination concerns one or more of the activities enumerated in the statute

42 U.S.C. § 1981 specifically protects "the making of contracts." 42. U.S.C. § 1981. Again, while Plaintiffs have failed to allege injury to any contractual relationship, an injury is apparent and could be inferred by the Court when construing the evidence in the light most favorable to the Plaintiffs. Here, because the citation issued shut down the club, all contracts previously enjoyed by Plaintiffs have likely been terminated. However, the shutting down of 77 Soul would not appear to effect Plaintiff Ziegler's ability to make contracts. Therefore, his §1981 rights do not appear to have been infringed.

### 5. Conclusion of 42 U.S.C. § 1981 Claim

When construing the facts in a light most favorable to Plaintiffs, each element is satisfied.

9

Accordingly, dismissing this claim at this stage of the proceeding would be inappropriate.

**IV. Intentional Interference with a Business Relationship**

The elements essential to recovery for a tortious interference with a business relationship are: 1) a business relationship; 2) the wrongdoer's knowledge thereof; 3) an intentional interference causing a breach or termination of the relationship; and 4) damages resulting therefrom.  The basic principle of a "tortious interference" action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby.  *Normandy Pointe Assocs. v. Paul J. Striebel & Assocs., Inc.*, 1993 Ohio App. LEXIS 3280 (Ohio Ct. App., June 28, 1993).

**a.  Business relationship and the wrongdoer's knowledge thereof**

A clear business relationship exists, as Plaintiffs own and operate a for-profit business, the night club "77 Soul."  The operation of this nightclub required owners to maintain contacts with several different locations to maintain the business.  Furthermore, it is also apparent the Defendants had knowledge of this relationship.

**b.  Intentional interference causing a breach or termination of the relationship**

There is also a question of whether Defendants have intentionally interfered with the "business relationship" enjoyed by Plaintiffs.  Clearly, the actions taken by Defendants were intentional and they interfered with the "business relationship" of Plaintiffs.  "Tortious interference with a business relationship occurs when the result of improper interference is not a breach of contract, but that a third party does not enter into or continue a business relationship with the plaintiff."  *Franklin Tractor Sales v. New Holland N. Am., Inc.*, 106 Fed. Appx. 342 (6th

Cir. 2004). Here, third parties have not been able to continue a business relationship with the Plaintiff because of the citation issued. Because the Court requires additional evidence on the validity of the citation, to grant Defendant's Motion to Dismiss at this stage is inappropriate.

### c. Damages and Conclusion

Finally, obvious damages have been inflicted on the Plaintiffs. These damages include, but are not limited to, deprivation of employment benefits, as well as their ability to engage in business, make contracts, and earn a salary. In addition, the business "ceased to operate" as a result of the citation issued. Because there exists a genuine issue of material fact regarding each element of Plaintiffs' intentional interference with a business opportunity claim, to dismiss at this stage of the proceeding is inappropriate.

## V. Defendants' Motion to Dismiss

Should Plaintiffs' claims raise a genuine issue of material fact, the Court must then examine the grounds upon which Defendant seeks dismissal. The Defendants' Motion to Dismiss relies on the Plaintiffs' failure to state a cause of action, the doctrine of qualified immunity, and the Plaintiffs' failure to exhaust judicial and state remedies.

### a. Failure to state a cause of action

Under the § 1983 claim, Defendants' claim Plaintiffs have failed to state a cognizable property interest. However, as evidenced above, a property interest is not required for a § 1983 claim. In order to succeed on a § 1983 claim, the Plaintiff must merely show that he was deprived of a right secured by the Constitution or laws of the United States and the deprivation was caused by a person acting under color of state law. *White v. Robertson-Deming*, 9 Fed. Appx. 418 (6th Cir. 2001). Thus, a property interest is not a necessity in a section 1983 claim and

11

Plaintiffs did not have to allege one. Finally, because a liberty interest is considered a sufficient constitutional right to bring a § 1983 claim, Plaintiffs have not failed to state a cause of action.

### b. Qualified Immunity

The Sixth Circuit utilizes a tripartite standard of review for qualified immunity claims, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc); accord *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545-546 (6th Cir. 2003), cert. Denied, 541 U.S. 1041 (2004); *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003), and thus asks, first, whether the plaintiff has shown a violation of a constitutionally protected right; second, whether that right was clearly established at the time such that a reasonable official would have understood his behavior violated that right; and third, whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate what the official allegedly did was objectively unreasonable in the light of the clearly established rights. *Sample v. Bailey*, 409 F.3d 689, 696-697 (6th Cir. 2005); *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (Citing *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

Here, Plaintiffs can establish the first element if the Court finds a liberty interest has been violated. Next, the Court must determine whether the right violated was a clearly established one of which a reasonable person would have known. "The right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987). Operating a lawful business is a clearly established constitutional right. *Wegener v. Covington*, 933 F.2d 390 (6th Cir. 1991). The Plaintiff can likely establish this element as well because it would be reasonable to think a police officer would know a citizen has a right to operate business without "unnecessary" police interference. Finally, Plaintiffs have offered sufficient evidence (among other things, racially offensive language, unwarranted use of drug-sniffing dogs during business hours, and unwarranted traffic stops on the premises) to indicate Defendants' actions were objectively unreasonable in light of the clearly established rights.

Plaintiffs can likely establish all three required elements. In addition, the Court must examine new facts which are not yet available at this stage of the proceeding. Accordingly, the Court rejects Defendants' qualified immunity defense.

### c. Failure to exhaust remedies

Defendants contend Plaintiffs' Fourteenth Amendment Due Process claims should be dismissed as Plaintiffs' failed to exhaust post-deprivation remedies. Pursuant to *Parratt v. Taylor,* 451 U.S. 527(1981), Defendants argue Plaintiffs failed to appeal the issuance of the Citation. Since the appeal process satisfies due process, Defendants state Plaintiffs failure to pursue this post-deprivation remedy precludes them from maintaining a procedural due process claim.

The Fourteenth Amendment prohibits state actors from depriving citizens of life, liberty and property without due process of law. See *Wolf v. McDonnell,* 418 U.S. 539, 558 (1974). In general, a plaintiff does not have to exhaust his/her judicial state remedies before bringing a § 1983 action. *Monroe v. Pape*, 365 U.S. 167, 183 (1961). The United States Supreme Court has previously stated, "we have on numerous occasions rejected the argument that a § 1983 action

13

should be dismissed where the Plaintiff has not exhausted state administrative remedies." *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 500-501 (1982) quoting *McNeese v. Board of Education*, 373 U.S. 668, 671-673 (1963). Furthermore, the United States Supreme Court states "exhaustion is not a prerequisite to an action under section 1983, and we have not deviated from that position in the nineteen years since *McNeese*." *Id*. However, under *Parratt,* a Fourteenth Amendment claim for violation of procedural due process may be dismissed if: 1) the deprivation was random; 2) pre-deprivation process was impracticable; 3) there was no authorization for the state actor actions in depriving plaintiff of his liberty or property; and 4) plaintiff fails to plead and prove his state post-deprivation remedies are inadequate. *Zinermon v. Burch,* 494 U.S. 113, 136-139 (1990), *Hudson v. Palmer,* 468 U.S. 517, 531-533 (1984). If the situation calls for quick state action, no procedural due process claim is stated when there exists adequate post-deprivation remedies. *Parratt* at 539. Where the state action was pursuant to state procedures and the situation did not require quick state action, the *Parratt* doctrine will not defeat the claim. *Zinermon* at 129. Having already determined Plaintiffs have at least a liberty interest to contract and without sufficient evidence to determine the randomness of the states actions, what pre-deprivation process was followed, the reason for the Citation and the Citation's immediacy, the Court finds dismissal under the *Parratt* doctrine inappropriate at the Motion to Dismiss stage, since much of the analysis requires evidence not presently before this Court. Based on these findings, the Defendants' Motion to Dismiss predicated on Plaintiffs' failure to exhaust their administrative/judicial remedies is denied.

## VI. CONCLUSION

Defendants' Motion to Dismiss is denied, in part, and granted, in part. Plaintiff Mighty

Lion can likely prove facts which will show the deprivation of its rights. Plaintiff Ziegler has failed to establish standing to assert constitutional claims under §1983 and §1981 and the Court dismisses his Constitutional claims. However, Mr. Zielger's tortious interference claim remains. Defendants' qualified immunity claim fails because the Plaintiff corporation has satisfied the tripartite standard and the Court must examine new facts which are not available at this stage of the proceeding. Finally, exhaustion of remedies is not required of Plaintiff in a §1983 claim, therefore, this claim remains.

      IT IS SO ORDERED.

| February 13, 2007 | s/Christopher A. Boyko |
|---|---|
| Date | CHRISTOPHER A. BOYKO |
| | United States District Judge |

This opinion is not for publication.